UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **SOPHIA EGGLESTON**, <br><br> Plaintiff, <br><br> vs. <br><br> **TWENTIETH CENTURY FOX FILM CORPORATION, et al.,** <br><br> Defendants. | 2:21-CV-11171-TGB-EAS <br><br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

In the mid-2000s, Sophia Eggleston wrote a memoir called "The Hidden Hand" detailing "her life of crime, imprisonment, and her attempt at redemption." Subsequently, Defendants created the television series *Empire*, with central character "Cookie Lyon." Plaintiff alleges that Cookie Lyon is based on Plaintiff's portrayal of herself, and that Defendants took material from the memoir in violation of Ms. Eggleston's copyright. This is the second complaint filed by Plaintiff making similar copyright claims; her previous case regarding these events was voluntarily dismissed before any final judgment. *See Eggleston v. Daniels, et al.*, Case No. 4:15-cv-11893 ("*Eggleston I*"). Defendants have filed a motion to dismiss under Federal Rule of Procedure 12(b)(6). ECF No. 16. For the reasons that follow, Defendants' Motion is **GRANTED**.

1

## I.   BACKGROUND

The facts of this case are little changed since the filing of the operative complaint in *Eggleston I*. ECF No. 43, Case No. 4:15-cv-11893. Sophia Eggleston wrote her memoir "The Hidden Hand" while in state prison. In that work she recounted her life growing up in Detroit, running a drug operation and gang, and eventually finding redemption and purpose through her relationship with God. In her Complaint she alleges that sometime in 2011, non-party Rick Appling, a movie producer, arranged for her to meet with Defendant Rita Grant Miller, who has also worked in production for various movies. ECF No. 1, ¶¶ 17-18. Miller and Eggleston allegedly discussed turning "The Hidden Hand" into a movie, and Plaintiff gave Miller a copy of her work. She alleges Miller said she would pitch the project to Defendant Lee Daniels, a noted Hollywood movie director. *Id.* at ¶ 23. Plaintiff alleges that Miller told her she had a meeting with Daniels to pitch the work, and that Miller gave him a copy of "The Hidden Hand". *Id.* at ¶¶ 25-27. She says that after this, Miller stopped answering her calls and texts. *Id.* at ¶ 29.

The Complaint next alleges that Daniels shared the materials Miller provided with others, and went on to create *Empire*, basing central character Cookie Lyon on Plaintiff's description of her own life and personality as contained in her memoir. *Id.* at ¶¶ 28, 31-38. Ms. Eggleston lists twenty-three different ways that she believes Cookie Lyon

2

and herself are similar or the same. *Id.* at ¶ 40. She also alleges being told by Miller that the two portrayals are "identical." *Id.* at ¶ 42.

Plaintiff brought her first lawsuit regarding these issues in 2015. Defendants there filed a motion to dismiss, which the Court granted in part and denied in part. Specifically, the Court dismissed Plaintiff's state law claim, but found that her copyright infringement claim could move forward to discovery. ECF No. 61, Case No. 4:15-cv-11893. Plaintiff subsequently voluntarily dismissed the lawsuit. Here, Plaintiff brings just one claim of copyright infringement in violation of 17 U.S.C. § 101 *et seq.* Her Complaint focuses exclusively on the similarities between herself and Cookie Lyon as the basis for the infringement claim.

Defendants once again filed a motion to dismiss in this action. ECF No. 16. After receiving complete briefing, the Court held a hearing on May 25, 2022, and is now prepared to resolve the issues presented.

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Consideration of a Rule 12(b)(6) motion is confined to the pleadings. *Id.* In evaluating the motion, courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent

3

with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her grounds for relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under *Ashcroft v. Iqbal*, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" that do not "permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678–679).

### III. ANALYSIS

#### A. Standard applicable to copyright claims

A copyright claim requires showing "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). In this case, ownership of a valid copyright is not disputed, so the remaining question is whether Defendants copied original elements of Plaintiff's work.

4

Without direct evidence of copying, a plaintiff can create "an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." *Stromback*, 384 F.3d at 293 (quoting *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999)). Defendants have conceded the issue of access for the purposes of this Motion. *See* ECF No. 16, PageID.85 n.15.

Defendants make three arguments in support of their motion. The first two concern whether the Complaint's allegations sufficiently describe any "original" elements of Plaintiff's work that would enjoy copyright protection. The third is an argument in the alternative: even if the Court were to find that there are protectible elements at issue in the pleadings, Defendants say that Plaintiff's pleadings cannot meet the substantial similarity test and therefore cannot show an inference that her work was illegally copied.

As a threshold matter, Defendants also argue that there is a higher pleading requirement in the Sixth Circuit for copyright cases. ECF No. 16, PageID.76-77 (citing *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008)). The Court cited this standard in its *Eggleston I* order. The Court notes that recent decisions by several judges in this district have posited that *Nat'l Bus. Dev.* merely articulated a standard more in line with the then-recently issued Supreme Court decision in *Twombly*, rather than creating a heightened pleading standard for copyright cases. *See Gen. Motors LLC*

5

*v. Dorman Prod., Inc.*, No. 15-12917, 2016 WL 5661578, at *3 (E.D. Mich. Sept. 30, 2016) (collecting cases at n.2). These cases also note the Sixth Circuit has not referenced any "heightened pleading standard" in copyright cases since *Nat'l Bus. Dev.* was decided. The Court is persuaded by the analysis in these cases and declines to apply a heightened standard to its analysis here.

**B. Copyright protection for a real-life person as a "character"**

Defendants' first argument is that copyright protection "for characters is limited to *fictional* characters," whose depictions are entirely based on creative expression. Because "The Hidden Hand" is an autobiography based on real life and facts, Defendants argue Ms. Eggleston cannot claim copyright protection of the factual depiction of herself described in the work. ECF No. 16, PageID.77-83 (emphasis in original). Plaintiff argues in response that her depiction of herself involves creativity and originality and therefore is protected. ECF No. 18, PageID.108-10.

Courts have recognized a "fact/expression dichotomy" in copyright law. While bare facts cannot be copyrighted, the manner in which those facts are expressed (how they are arranged, selected, portrayed, etc.) can be. *Feist*, 499 U.S. at 350-51 ("A factual compilation is eligible for copyright if it features an original selection or arrangement of facts, but the copyright is limited to the particular selection or arrangement. In no event may copyright extend to the facts themselves."); *see also Harper &*

*Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 556-57 (1985) ("copyright assures those who write and publish factual narratives . . . that they may at least enjoy the right to market the original expression contained therein as just compensation for their investment.").

*Feist* offers an example of the fact/expression dichotomy in practice: a telephone book publisher copied names, towns, and telephone numbers from a rival's directory, and went on to print its own directory with this same information. The Supreme Court found that the bare facts—the biographical information—did not enjoy copyright protection. It also found that the original publisher's arrangement of those facts—listing them in alphabetical order—did not involve creativity of the kind that would make it eligible for copyright protection. *Feist,* 499 U.S. at 363-64. A closer analogue to the situation in this case is *Harper & Row*, where a magazine was sued for printing direct quotes and other material paraphrased from President Gerald R. Ford's yet-to-be-released memoir. While the Court's decision in *Harper & Row* turned on a question of fair use, which is not at issue here, it did note that "verbatim copying of some 300 words of direct quotation" from the manuscript was an infringement on Ford's copyright because it represented his original expression regarding events in his life. 471 U.S. at 548-49, 569.

The Sixth Circuit has not addressed the question of whether a real-life person (as opposed to a fictional character) can be copyrighted. Defendants cite to two out-of-circuit cases decided after this Court's

7

decision in *Eggleston I* that have considered this issue. The first, from the Ninth Circuit, found that that a "character based on a historical figure is not protected for copyright purposes." *Corbello v. Valli*, 974 F.3d 965, 976 (9th Cir. 2020). Setting aside the question of whether a ruling pertaining to a work about a "historical character" could be applied to Plaintiff, *Corbello* is also distinguishable because in that case the alleged infringement was the use of material from a biography of *Four Seasons* singer Tommy DeVito to create a stage or screen depiction of *that same individual*. Here, Plaintiff states that a new *fictional* character—not a screen version of herself—was created based on her personality and life story. *Corbello* is therefore of minimal value as a comparison.

  A recent Eleventh Circuit case is more on point. There, the plaintiff alleged that a scene in the TV series *Narcos* was taken from a chapter in her memoir such that it infringed on her copyright. *Vallejo v. Narcos Prods. LLC*, 833 F. App'x 250 (11th Cir. 2020). As in our case, in *Vallejo* the plaintiff had written a memoir about herself, which in part chronicled her real love affair with drug kingpin Pablo Escobar. She claimed that several scenes from episodes of *Narcos* used a fictional character based on her, who engaged in conduct with Escobar that was lifted from her memoir. But the Eleventh Circuit found on the facts that the scenes at issue were not substantially similar to the ones from her memoir. *Id.* at 259 ("[W]e conclude that the defendants used unprotectable facts from Ms. Vallejo's memoir and did not copy her expression of those facts

8

because the plot, setting, mood, and the characters' interplay are not substantially similar.").

In that case, it is significant that the parties apparently did not dispute the fact that *Narcos* depicted a fictional character who was clearly based on or intended to "caricaturize" the plaintiff herself. ¶ 19, ECF No. 1, Case No. 1:18-cv-23462-KMM (S.D. Fla. 2018). In her complaint Ms. Vallejo did not argue, and the district court below did not find, that creating a fictional character whose appearance, context, or activities are derived from the facts of a real person's life as depicted in a copyrighted memoir constitutes a violation of copyright law. *See id.* at Compl., ECF No. 1; Order Granting in Part and Denying in Part Mot. to Dismiss, ECF No. 45. Rather, the claim was that the plaintiff's specific description or expression regarding certain events in her life was protected and had been illegally copied by the defendants. Unlike the case before the Court, in the *Vallejo* complaint the plaintiff's claim of infringement described three scenes she alleged were taken from her memoir at a high level of detail. *Id.* at ¶¶ 29-38, ECF No. 1. The complaint did not advance a claim that the writers of *Narcos* were prohibited from including a character in the show clearly based on the plaintiff's description of herself in her memoir.

Applying the holdings of these cases to the issue of whether a "real person" as depicted in a memoir can be copyrighted, it is clear that the historical recitation of individual facts that Ms. Eggleston presents in her

memoir would fall on the "fact" side of the fact/expression dichotomy and cannot claim copyright protection. Nevertheless, certain aspects of the way her life story is expressed and depicted in her writing would be protected—a memoir is not a bulleted list of facts about a person's life, but involves significant arrangement and selection, as well as reflection and inner monologue that provides context and color to the facts. Both *Narcos* and *Harper and Row* make this clear. Thus, a screenwriter could not lift lines of dialogue from "The Hidden Hand," nor structure a scene to mimic exactly one that Plaintiff describes. If there were allegations along these lines, the Court could examine them as the Eleventh Circuit did in *Narcos* for substantial similarity.

But Plaintiff does not identify any scene, dialogue, or portrayal that was copied in this way. In *Narcos*, the Eleventh Circuit was not troubled that the fictional character in the show was clearly based directly on the life of the real Vallejo as she appeared in her memoir. Similarly, here, using some of the facts of Eggleston's life—even if they were transferred into a new, fictional character—does not violate copyright protections without a further showing that particular creative expressions concerning the depiction of Eggleston's character that were unique to her memoir were copied. While this analysis leads the Court to reach a different outcome than it did in *Eggleston I,* the development of this issue in the caselaw as cited indicates that the pleadings do not sufficiently describe protected elements of Plaintiff's work that were infringed.

Defendants' remaining arguments may be quickly dispatched. Defendants' claim that Plaintiff's character is not sufficiently delineated in her memoir so as to be eligible for copyright protection relies entirely on caselaw dealing with protection relating to fictional characters. *See Clancy v. Jack Ryan Enterprises, Ltd.*, No. CV ELH-17-3371, 2021 WL 488683, at *38 (D. Md. Feb. 10, 2021) (discussion of the standard for character protection and collecting cases). Given that the memoir is entirely about Plaintiff, a real person, the Court finds this line of argument inapposite. As to whether there is substantial similarity between Plaintiff and the character of Cookie Lyon, this analysis requires a finding of protected elements in the pleadings; because there are none, the Court cannot make any finding as to substantial similarity.

## CONCLUSION

Defendants' Motion to Dismiss is **GRANTED,** and the Complaint is therefore **DISMISSED WITHOUT PREJUDICE**. Any amended complaint must be filed within 30 days of the date of this Order.

**IT IS SO ORDERED**, this 16th August, 2022.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge