UNITED STATES DISTRICT COURT
EASTER DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **SOPHIA EGGLESTON,**  Plaintiff,  vs.  **TWENTIETH CENTURY FOX FILM CORPORATION, *et al.*,**  Defendants. | **2:21-cv-11171-TGB-EAS**  **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF NO. 28)** |

Sophia Eggleston, the Plaintiff in this case, has been suing Twentieth Century Fox Film Corporation and others associated with the creation of the television show *Empire* since 2015 on the grounds that they based the character Cookie Lyon on the story of her life.

This is Eggleston's second lawsuit against Twentieth Century Fox Film Corporation—the first was dismissed voluntarily without prejudice before final judgment. Her legal theories have changed since she filed her initial complaint, but the central focus of the case remains the same: Eggleston asserts that her life story—as she portrayed it in her copyrighted memoir, *The Hidden Hand*—is the uncredited inspiration for the character of Cookie Lyon in the popular television series *Empire*.

Pending before the Court is Defendants' Motion to Dismiss Eggleston's Amended Complaint. ECF No. 28. For the reasons explained below, the motion will be **GRANTED**, and the case will be **DISMISSED.**

1

## I.  BACKGROUND

The basic facts of this case are set out in the Court's prior order, *Eggleston v. Twentieth Century Fox Film Corp.*, No. 21-11171, 2022 WL 3371601 (E.D. Mich. Aug. 16, 2022), but some additional procedural history is helpful to set the stage for the pending motion.

This lawsuit has its origins in May 2015, when Eggleston filed a complaint for copyright infringement against Fox and several of its affiliates, subsidiaries, and employees. *Eggleston v. Daniels*, No. 15-11893 (E.D. Mich. May 27, 2015). Initially representing herself, Eggleston alleged that her memoir, *The Hidden Hand*, was the inspiration for *Empire*—and, in particular, for the character of its protagonist's wife, Cookie Lyon. After Eggleston hired an attorney, she amended her complaint. The amended complaint raised two claims: a federal copyright-infringement claim, and a Michigan state-law claim for appropriation of the right to publicity. It described Eggleston's meetings and conversations with a screenwriter and a producer and listed twenty-three "striking and shocking" similarities between the way Eggleston depicted herself in her memoir and Cookie Lyon.

Defendants moved to dismiss the amended complaint, arguing that it failed to state a plausible claim for relief. The Court granted in part and denied in part this motion, agreeing with Defendants that the complaint did not state a cognizable claim under Michigan law. *Eggleston v. Daniels*, No. 15-11893, 2016 WL 4363013 (E.D. Mich. Aug. 16, 2016).

But it concluded that Eggleston had adequately pleaded a copyright-infringement claim. More specifically, the Court reasoned that Eggleston had alleged substantial similarities between her depiction of herself in her memoir and Cookie Lyon, and that those similarities rose above stock standard stories about gangs, drugs, and hip hop.

When Eggleston's competency was called into question in a contemporaneous criminal case, the parties stipulated to an adjournment and sometime later, on March 21, 2017, the case was voluntarily dismissed without prejudice.

Less than a month later, acting without counsel, Eggleston submitted a series of filings, asking the Court to reopen the case. The Court denied these requests, explaining that they were procedurally improper but that Eggleston remained free to re-file her complaint. *Eggleston v. Daniels*, No. 15-11893, 2017 WL 3977799, at *2 (E.D. Mich. Sept. 11, 2017).

Eggleston did not re-file her case until more than four years later, on May 20, 2021. When she did, she had a new lawyer. In a 10-page complaint, she renewed her copyright-infringement claim and again repeated her list of twenty-three alleged similarities between the way that she portrayed herself in her memoir and Cookie Lyon. ECF No. 1.

Defendants again moved to dismiss the complaint. But this time their attack on the complaint was more nuanced. Whereas they previously argued that Eggleston could not allege substantial similarities

3

between her depictions of herself in her memoir and Cookie Lyon because Cookie Lyon was essentially a stock character in a soap-opera-style story about gangs, drugs, and hip hop, *Eggleston*, 2016 WL 4363013, at *4, they now argued that Eggleston's copyright-infringement claim failed because it was based on historical facts about herself over which she could not assert copyright protection, *Eggleston*, 2022 WL 3371601, at *3.

The Court agreed with Defendants' general proposition that bare, historical facts were not subject to copyright protection and dismissed Eggleston's claim. *See id*. But it also acknowledged that the manner in which historical facts were expressed—*i.e.*, their arrangement, shading, and so forth—*could* be protected. *Id*. at *4. If Eggleston were able to identify particular reflections, inner monologues, scenes, or other protected expressions that had been lifted from her memoir and used in *Empire*, such allegations could possibly state a plausible copyright claim. Consequently, the Court gave Eggleston another opportunity to amend her complaint. *Id*.

But instead of including additional allegations about similarities between her memoir and *Empire*, Eggleston filed a new complaint that deleted all references to her copyright registration and copyright law generally and changed her legal theory entirely.

Eggleston's amended complaint raises a single claim for unjust enrichment under Michigan law. It focuses on Eggleston's interactions with the screenwriter and producer. It alleges that, before the release of

4

*Empire*, the three discussed converting Eggleston's life story into a script. ECF No. 27, PageID.154. According to the complaint, in 2011, the screenwriter interviewed Eggleston "at length about her background and took copious notes," and Eggleston provided her with a copy of *The Hidden Hand. Id.* The screenwriter then created a "script or treatment," which she shared with the producer, and began dodging Eggleston's calls—although she admitted at some point that she recalled receiving a copy of *The Hidden Hand. Id.* at PageID.154, 157. Eggleston says that, "[w]ithout [her] significant contribution, the Cookie Lyon character would not exist." *Id.* at PageID.157. The amended complaint expressly states that it "does not allege any violation of the Copyright Act. Rather it seeks compensation above $3,000,000 for unjust enrichment." *Id.* at PageID.152.

Defendants have moved to dismiss the amended complaint, contending that the unjust-enrichment claim is preempted by the Copyright Act and further barred by Michigan's statute of limitations.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests whether a complaint has adequately stated a claim for relief. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

5

In evaluating whether a plaintiff has set forth a "plausible" claim, the Court accepts as true all well-pleaded factual allegations. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "[M]ere conclusions," however, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. "Threadbare recitals of the elements of a cause of action," devoid of further factual enhancement, will not do. *Id.* at 678.

### III. DISCUSSION

#### A. Copyright Preemption

Defendants first contend that Eggleston's unjust-enrichment claim under Michigan law is preempted by the federal Copyright Act. They assert that her amended complaint does "nothing more than re-label her dismissed federal copyright infringement claim as a state law 'unjust enrichment claim.'" ECF No. 28, PageID.174. The Court agrees.

The Copyright Act has pre-emptive force over certain state-law claims. *See* 17 U.S.C. § 301(a). A state-law claim is preempted by the Copyright Act when: (1) the claim involves a work "within the subject matter of copyright;" and (2) the rights underlying the state-law claim are the "equivalent of one of the exclusive rights within the scope of federal copyright protection." *Wright v. Penguin Random House*, 783 F. App'x 578, 582 (6th Cir. 2019).

#### *1. Subject Matter*

Memoirs and autobiographies, such as *The Hidden Hand*, are tangible literary expressions that fall within the range of materials

protected by the Copyright Act. *See id.* Eggleston nonetheless argues that her unjust-enrichment claim falls outside the subject matter of copyright because she seeks compensation only for her labor in developing the Cookie Lyon character—*i.e.*, the time she spent with the screenwriter, and the creative effort she expended in sharing her ideas with the screenwriter, rather than the use of specific material from *The Hidden Hand*. ECF No. 30, PageID.192. She emphasizes that "[t]here is no allegation in the amended complaint accusing the defendants of copying, misappropriating, or infringing any copyright" and that the amended complaint expressly disavows any copyright-infringement claim. *Id.*

While only tangible expressions qualify for protection under the Copyright Act, the Sixth Circuit has held that the scope of the Copyright Act's subject matter is broader than the scope of its protection and extends also to intangible "elements of expression which themselves cannot be protected." *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 455 (6th Cir. 2001). In *Wrench*, for example, plaintiffs raising a state-law claim for breach of an implied-in-fact contract attempted to distinguish between concepts they had conveyed to the defendant orally and tangible expressions—like storyboards, scripts, and drawings—to avoid preemption. *Id.* The Sixth Circuit declined their invitation to "separate … intangible ideas from the[] tangible expressions" and agreed with the district court that their "state law claims depended substantially upon works subject to copyright." *Id.* at 454-55.

7

Here, the Court will similarly decline Eggleston's invitation to separate out her intangible, concept-based contributions to the Cookie Lyon character from the material in her memoir. Although she has deleted all references to the word "copyright" in her amended complaint, the gravamen of her claim remains the same: Cookie Lyon resembles Eggleston as she portrayed herself in *The Hidden Hand*. The amended complaint includes the same list of similarities between that portrayal and Cookie Lyon and additionally asserts that the screenwriter received a copy of the memoir while writing the script for *Empire*. Eggleston's argument that the labor she expended on the development of the Cookie Lyon character differs from the effort she expended writing her memoir mirrors the argument rejected by the Sixth Circuit in *Wrench*.

### 2. *Equivalency*

To determine whether a state law claim is equivalent to a federal copyright claim, the Court applies "a functional test … ask[ing] whether the conduct that allegedly violated the right at the core of the state-law claim is also conduct that infringes on a right protected by the Copyright Act." *Wright*, 783 F. App'x at 582 (internal quotations omitted). Whether Eggleston's unjust-enrichment claim is preempted depends on whether the claim contains an "extra element" that "qualitatively" differs from a copyright infringement claim. *See id.*; *Wrench*, 256 F.3d at 452, 456.

Beyond arguing that her labor in developing the Cookie Lyon character differs from the time and effort she spent writing *The Hidden*

8

*Hand*, Eggleston does not address how the rights implicated by a Michigan unjust-enrichment claim may be distinguished from the rights implicated by a federal copyright-infringement claim.

A Michigan unjust-enrichment claim is generally considered to be the equitable counterpart of a legal claim for breach of contract. *Keywell & Rosenfeld v. Bithell*, 657 N.W.2d 759, 776 (Mich. Ct. App. 2002). Where there is no express contract between two parties, Michigan "law will imply a contract in order to prevent unjust enrichment." *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 903 (Mich. Ct. App. 2006). Michigan courts recognize two forms of implied contracts: contracts implied-in-fact and implied-in-law. *Moll v. Wayne Cnty.*, 50 N.W.2d 881, 883 (Mich. 1952), *overruled on other grounds by Brown v. State, Dep't. of Mil. Aff.*, 191 N.W.2d 347 (Mich. 1971). A contract implied-in-fact is found where there is a "meeting … of the minds of plaintiff and defendant on the nature of the transaction or on defendant's assuming an obligation to repay plaintiff," while a contract implied-in-law is "imposed by fiction of law" and predicated on a "receipt of a benefit by a defendant from a plaintiff" where no contract was apparent. *Id.* (quotations omitted).

As best as the Court can discern, Eggleston's claim is essentially a claim for a breach of an implied-in-law contract. Eggleston does not allege that Defendants promised to pay for her contributions. *Cf. Mahavisno v. Compendia Bioscience, Inc.*, No. 13-12207, 2014 WL 340369, at *7 (E.D. Mich.) (Cox, C.J.) (finding a contract implied-in-fact where there was an

9

allegation of a promise to pay). Contracts implied-in-law "require[] no extra element" that would qualitatively set them apart from federal copyright-infringement claims. *Wrench*, 256 F.3d at 459.

Accordingly, Eggleston's unjust-enrichment claim is preempted by the Copyright Act.

## B. Statute of Limitations

Defendants also argue Eggleston's unjust-enrichment claim is time-barred because it is subject to a three-year limitations period. ECF No. 28, PageID.180-81. Eggleston does not dispute that her claim is time-barred if it is subject to a three-year limitations period. But, she says, the statute of limitations for an unjust-enrichment claim is six years—which was tolled during the pendency of her first case. ECF No. 30, PageID.194-95. Her arguments fail to persuade.

### *1. Applicable Limitations Period*

Under MCL § 600.5805(2), the general limitations period "to recover damages … for injury to a person or property" is three years. MCL § 600.5807(9) provides a six-year limitations period "to recover damages or money due for breach of contract," subject to some limitations not relevant here. MCL § 600.5813, meanwhile, subjects "[a]ll other personal actions" to a six-year limitations period.

Taking Eggleston's unjust-enrichment claim for uncompensated labor at face value, it appears at first glance that she is correct that her claim would be subject to a six-year limitations period—as provided by

10

MCL § 600.5807(9). As noted above, Michigan courts generally consider unjust-enrichment claims to be the equitable counterparts of legal breach-of-contract claims. And they apply statutory limitations periods by analogy to equitable claims. *See Taxpayers Allied for Constitutional Taxation v. Wayne Cnty.*, 537 N.W.2d 596, 600 n.9 (Mich. 1995). The most closely analogous legal claim to Eggleston's "equitable" claim for uncompensated labor is a claim for breach of contract.

But Eggleston does not seek equitable relief. She seeks damages—"compensation," not restitution—in the amount of $3,000,000 for Defendants' use of her character. Notwithstanding its guidance to apply limitations periods to equitable claims by analogy, the Michigan Supreme Court has held that when a claim is founded on a duty "imposed by law" rather than the breach of a promise, it is governed by MCL § 600.5805's three-year limitations period. *Miller-Davis Co. v. Ahrens Constr., Inc.*, 802 N.W.2d 33, 39 (Mich. 2011); *see also PCA Minerals, LLC v. Merit Energy Co., LLC*, 725 F. App'x 342, 348 (6th Cir. 2018) (recognizing that "Michigan courts … conduct a gravamen analysis when a plaintiff attempts to avoid the applicable statute of limitations by ignoring the true nature of the wrong alleged and recasting it as a claim subject to a longer statute"); *Rice v. Music Royalty Consulting, Inc.*, 397 F. Supp. 3d 996, 1009 (E.D. Mich. 2019) (Edmunds, J.) (applying three-year limitations period to similar unjust-enrichment claim); *Ultra-Precision Mfg., Ltd v. Ford Motor Co.*, No. 01-70302, 2002 WL 32878308,

at *11 (E.D. Mich. May 31, 2002) (Roberts, J.) (same). As the Michigan Court of Appeals has explained, "[a] plaintiff may not evade the appropriate limitation period by artful drafting." *Simmons v. Apex Drug Stores, Inc.*, 506 N.W.2d 562, 564 (Mich. Ct. App. 1993). Eggleston's claim is thus time-barred.

Eggleston relies on two cases to argue otherwise. First, she cites *McGuire v. Metropolitan Life Insurance Co.*, 899 F. Supp. 2d 645, 663 (E.D. Mich. 2012) (Ludington, J.). But that case involved plaintiffs who were attempting to assert federal common-law claims based on fraudulent misrepresentation, not Michigan unjust-enrichment claims; Judge Ludington reasoned that fraudulent misrepresentation was the most closely analogous claim. There is no similar fraud theory being asserted here. Second, Eggleston cites *Miller v. Laidlaw & Co. Ltd.*, No. 11-12086, 2012 WL 1068705, at *11 (E.D. Mich. Mar. 29, 2012) (Hood, J.). But her reliance on *Miller* is similarly misplaced; Judge Hood dismissed the unjust-enrichment claim with leave to amend to determine whether the plaintiff's claim depended on the breach of promise or contract or something else.

The applicable limitations period is three years. Because Eggleston waited in excess of that to refile her suit, her claim is time-barred.

### *2. Tolling*

Michigan's tolling provisions are set out in MCL § 600.5856, which provides that the statutes of limitations governing claims are tolled "[a]t

the time the complaint is filed" or "[a]t the time jurisdiction over the defendant is otherwise acquired." Michigan courts apply these tolling provisions "*only* when jurisdiction over defendant is gained pursuant to Court proceedings *involving the same cause of action.*" *Barczak v. Rockwell Int'l. Corp.*, 244 N.W.2d 24, 25 (Mich. Ct. App. 1976) (emphasis added); *see also Great Lakes Gas Transmission Co. v. State Treasurer*, 364 N.W.2d 773, 780 (Mich. Ct. App. 1985) ("Prior lawsuits between parties will toll the running of the period of limitation where the prior lawsuit *involves the same cause of action.*" (emphasis added)).

Eggleston cannot have it both ways. Limitations periods "are intended to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013) (internal quotations omitted). Either she is asserting the same cause of action for copyright infringement she raised in her prior lawsuit, or she is asserting a claim that is fundamentally different—of which the Defendants were not previously on notice. If the latter is true, she cannot avail herself of tolling.

Moreover, as Defendants note in their reply brief, the "services" that are the subject of the complaint were rendered in 2011. Eggleston herself does not address when she "discovered" her new claim, so the Court sees no reason to quibble with Defendants' position that it accrued when the "services" were rendered in 2011. Thus, even if the Court were

13

to give Eggleston the benefit of a six-year limitations period and 664 days of tolling (the time between the filing of her initial lawsuit on May 27, 2015 and its dismissal on March 21, 2017), her claim would have expired six years plus 664 days after the services were rendered in 2011—that is, approximately eight years later—in 2019.

The Court notes that, if Eggleston were to revert to her original copyright-infringement claim at this point, it would also be time-barred. The limitations period for a copyright-infringement claim is three years. *See* 17 U.S.C. § 507(b).

## IV. CONCLUSION

For the reasons above, Defendants' Motion to Dismiss is **GRANTED**, and the complaint is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this 29th day of September, 2023.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge